**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                            :
JOSEPH M. LOGMANS,          :
                            :      Civil Action No. 02-5622(JAP)
            Petitioner,     :
                            :
        v.                  :
                            :              OPINION
TERRANCE MOORE, et al.,     :
                            :
            Respondents.    :
_____:
```

**APPEARANCES:**

> JOSEPH M. LOGMANS, Petitioner <u>Pro Se</u>
> # 261471
> East Jersey State Prison
> Lock Bag "R"
> Rahway, New Jersey 07065
>
> NANCY A. HULETT, ESQ.
> Office of the New Jersey Attorney General
> Division of Criminal Justice, Appellate Section
> P.O. Box CN 086
> Trenton, New Jersey 08625
> Attorneys for Respondents

**PISANO, District Judge**

This matter is before the Court on petitioner Joseph M. Logmans' application for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Joseph M. Logmans ("Logmans"), is presently
confined at the East Jersey State Prison in Rahway, New Jersey,
serving an aggregate 30 year term of imprisonment with a 15 year
parole disqualifier.  (Petition, ¶ 3).  He was convicted on April
21, 1993, by jury trial before the Superior Court of New Jersey,
Law Division, Passaic County, on the following charges: Count 1)
2nd degree kidnapping, in violation of N.J.S.A. 2C:13-1b; Count
2) 3rd degree criminal restraint, in violation of N.J.S.A. 2C:13-
2(a); Counts 3 & 4) 1st degree aggravated sexual assault, in
violation of N.J.S.A. 2C:14-2a(3); Count 5) 2nd degree sexual
assault, in violation of N.J.S.A. 2C:14-2c(1); Count 6) 3rd
degree aggravated criminal sexual contact, in violation of
N.J.S.A. 2C:14-3a, 2C:14-2a(3) and/or (6); Count 7) 4th degree
criminal sexual contact, in violation of N.J.S.A. 2C:14-3b,
2C:14-2c(1); and Counts 8 & 9) 3rd degree terroristic threats, in
violation of N.J.S.A. 2C:12-3a and 2C:12-3b.  (Pet., ¶¶ 1-6,
Respondents' Exhibit[1] 2).  Logmans was sentenced on May 19, 1994.

---

[1]   In answering the habeas petition, Respondents submitted
the following documentary materials for review, (which shall be
abbreviated as "Ra"):

    Ra1   Indictment Number 92-04-0413.
    Ra2   Judgment of Conviction.
    Ra3   Notice of Appeal
    Ra4   Petitioner's plenary brief on direct appeal.
    Ra5   State's plenary response brief on direct appeal.

2

Ra6   Petitioner's reply brief.
Ra7   Petitioner's N.J.Ct.R. 2:6-11(d) letter on subsequent
      case law.
Ra8   State's N.J.Ct.R. 2:6-11(d) letter on subsequent case
      law.
Ra9   Petitioner's N.J.Ct.R. 2:6-11(d) letter on subsequent
      case law.
Ra10  State's response to Petitioner's N.J.Ct.R. 2:6-11(d)
      letter on subsequent case law.
Ra11  State's N.J.Ct.R. 2:6-11(d) letter on subsequent case
      law.
Ra12  Petitioner's N.J.Ct.R. 2:6-11(d) letter on subsequent
      case law.
Ra13  Petitioner's N.J.Ct.R. 2:6-11(d) letter on subsequent
      case law.
Ra14  Per Curiam opinion of Appellate Division.
Ra15  Petitioner's petition for certification to New Jersey
      Supreme Court.
Ra16  State's letter in opposition.
Ra17  Order denying certification.
Ra18  Petitioner's amended petition for post-conviction
      relief ("PCR").
Ra19  State's brief opposing the PCR petition.
Ra20  Order denying post-conviction relief.
Ra21  Notice of Appeal.
Ra22  Petitioner's brief on appeal from denial of PCR
      petition.
Ra23  State's responding brief.
Ra24  Petitioner's reply brief.
Ra25  Per Curiam opinion of Appellate Division affirming
      denial of PCR petition.
Ra26  Petitioner's petition for certification to the New
      Jersey Supreme Court.
Ra27  State's letter in opposition.
Ra28  Order denying certification.
Ra29  Transcript dated March 31, 1992 and April 6, 1992.
Ra30  Transcript dated April 29, 1992.
Ra31  Transcript dated October 16, 1992.
Ra32  Transcript dated November 5, 1992.
Ra33  Transcript dated March 22, 1993.
Ra34  Transcript dated March 23, 1993 (Part I).
Ra35  Transcript dated March 23, 1993 (Part II).
Ra36  Transcript dated March 24, 1993 (Part I).
Ra37  Transcript dated March 24, 1993 (Part II).
Ra38  Transcript dated March 25, 1993.
Ra39  Transcript dated March 29, 1993.

On or about July 11, 1994, Logmans filed a direct appeal of his conviction and sentence to the New Jersey Superior Court, Appellate Division, raising fourteen grounds for relief.  (Ra3, Ra4).  The Appellate Division affirmed Logmans' convictions and sentence by opinion filed on July 8, 1997.  (Ra14).  Logmans

---

Ra40 Transcript dated March 31, 1993.
Ra41 Transcript dated April 1, 1993.
Ra42 Transcript dated April 2, 1993 (Part I).
Ra43 Transcript dated April 2, 1993 (Part II).
Ra44 Transcript dated April 5, 1993 (Part I).
Ra45 Transcript dated April 5, 1993 (Part II).
Ra46 Transcript dated April 6, 1993 (Part I).
Ra47 Transcript dated April 6, 1993 (Part II).
Ra48 Transcript dated April 7, 1993 (Part I).
Ra49 Transcript dated April 7, 1993 (Part II).
Ra50 Transcript dated April 8, 1993 (Part I).
Ra51 Transcript dated April 8, 1993 (Part II).
Ra52 Transcript dated April 12, 1993 (Part I).
Ra53 Transcript dated April 12, 1993 (Part II).
Ra54 Transcript dated April 13, 1993 (Part I).
Ra55 Transcript dated April 13, 1993 (Part II).
Ra56 Transcript dated April 14, 1993 (Part I).
Ra57 Transcript dated April 14, 1993 (Part II).
Ra58 Transcript dated April 15, 1993 (Part I).
Ra59 Transcript dated April 15, 1993 (Part II).
Ra60 Transcript dated April 16, 1993 (Part I).
Ra61 Transcript dated April 16, 1993 (Part II).
Ra62 Transcript dated April 19, 1993.
Ra63 Transcript dated April 20, 1993.
Ra64 Transcript dated April 20, 1993 (vol. II).
Ra65 Transcript dated April 21, 1993.
Ra66 Transcript dated April 22, 1993.
Ra67 Transcript dated May 7, 1993.
Ra68 Transcript dated October 8, 1993.
Ra69 Transcript dated February 22, 1994.
Ra70 Transcript dated April 21, 1994.
Ra71 Transcript dated May 19, 1994.
Ra72 Transcript dated July 22, 1994.
Ra73 Transcript dated December 1, 2000.

filed a petition for certification with the New Jersey Supreme
Court, which was denied on November 10, 1997.  (Ra17).

In or about May 1998, Logmans filed a <u>pro se</u> petition for
post-conviction relief ("PCR") with the Superior Court of New
Jersey, Law Division, Passaic County.  Logmans' state PCR counsel
then filed an amended petition on or about May 19, 2000.  (Ra18).
The petitions raised claims of ineffective assistance of counsel,
unlawful sentence, and trial court error in refusing to permit
sidebar conferences.  There was no evidentiary hearing on the
state PCR petition.  (Pet. At ¶¶ 11(a)(3), 11(a)(4)).  Post-
conviction relief was denied by the Honorable Randolph M.
Subryan, J.S.C., on December 19, 2000.  (Ra20).  Logmans appealed
and the New Jersey Appellate Division affirmed by <u>per curiam</u>
opinion filed on May 13, 2002.  (Ra25).  The Supreme Court of New
Jersey denied certification on October 9, 2002.  (Ra28).

Logmans filed the instant federal habeas petition on or
about November 22, 2002.  Respondents answered the petition and
provided the relevant state court record on March 13, 2003.
Logmans filed a traverse on or about March 27, 2003.

B.  <u>Factual Background</u>

The following rendition of facts are taken from the state
court record and the state appellate court opinions.  These facts
show the testimony and evidence elicited and proven at trial.

On August 1, 1991, a female runner, J.R., set out on her regular morning run, between 5:45 a.m. and 5:50 a.m.  As she ran past a local restaurant, she did not see the police car usually parked there.  Instead, she saw a man standing beside a dark-colored, two-door hatchback, looking at her.  The car appeared to be unkempt and had dark wheel-wells.  The man was a heavy white male with brown hair.  He wore a red t-shirt.

At about 6:00 a.m., the man approached J.R. as she ran along High Mountain Road.  He asked J.R. the way to Paterson and as she pointed, he grabbed her arm and forcibly dragged J.R. into a wooded area.  The man told J.R. that he intended to rape her.  J.R. struggled and yelled "fire" until he told her he would kill her if she continued to yell.  He hit her on the side of the head, pushed her head down to her knees, and held her by her hair.  J.R. tried to hit the man in the crotch three or four times until he punched her in the head.  He then dragged J.R. about 10 to 15 feet into the woods.  As she tried to hit him again, he dragged J.R. another 20 feet in the woods.

The man pulled down J.R.'s running shorts, but had not noticed that she had defecated.  She told him that she could not have sex because of recent surgery, and he asked to see the surgery.  After looking, the man said he would perform digital penetration instead and inserted his middle finger inside her vagina.  After doing this two times, he noticed feces on his hand

and became angry.  J.R. apologized, saying that it was a result of her surgery.

The man then told J.R. to pull up her pants and they went further into the woods, about 70 to 90 feet.  When they reached a clearing, he pushed J.R. onto the ground and told her to undress completely, which she did.  The man ordered J.R. to touch herself on her breasts and vaginal area.  He failed to get aroused, so he undid his worn brown belt, pulled down his light-colored pants, and grabbed J.R.'s hand and put it on his testicles.  He demanded that J.R. touch him to "get him off."  J.R. recalled that the man's flaccid penis was three inches and his pubic hair was strawberry blond to reddish in color.

J.R. touched the man's penis and said, "If you kill me and you hurt me like this you are going to affect a lot of people."  The man got emotional.  She asked him his religion and he answered that he was a "Methodist".  J.R. continued to talk to the man.  She said if he let her go, no one would get hurt.  But the man said he could not do that.  He asked her name, and she answered him.  She likewise asked the man's name, but he would not tell her.  He told J.R. that he did not know what to do: whether he should let her go and turn himself in.  He also said he had never done anything like this before.  But then the man said that he could not let J.R. tell anyone about this, that he could not let her go to the police, and that he would likely have

7

to kill her.  Finally, he told J.R. to get dressed and to think about how to handle the situation.  J.R. dressed except for her socks and sneakers.  She then took a long look at the man and "ran like hell."

A witness, John Campana was on High Mountain Road that same morning and saw J.R. running with her sneakers in hand.  She looked upset.  Campana then saw a 6 foot tall, 225 pound man, wearing dungarees and a t-shirt, stumble out of the woods.

J.R. ran up to the Haledon Filter Plant to get help.  The supervisor at the plant that morning let J.R. in and she called the police.  J.R. wrote down a description of her attacker.  She described him as 6 feet tall, 270 pounds, brown hair, brown eyes, and a "pock mark" or a "ring worm type mark" under his left eye.

The police arrived about 5 minutes later at 6:37 a.m.  A detective took J.R. to the Wayne General Hospital to treat her injuries and J.R.'s clothes were placed in a bag.  They left the hospital sometime between 9:45 a.m. and 10:15 a.m. to return to the crime scene.  Then they went to the Bergen County Sheriff's department to make a composite sketch of J.R.'s attacker.  J.R. gave essentially the same description as noted above, except she added that the attacker looked like the actor John Candy, was between 28 to 33 years of age, and had a series of pock marks that were shaped like a half moon on his face.

Once the sketch was completed, the investigation turned to identifying the car. J.R. was shown books with many different car makers and vehicles, but J.R. could not find the same type of vehicle as the suspect's car. The police took her to dealerships to find a match, but they were not successful. When one of the detectives saw the computer-generated composite sketch of the attacker, it reminded him of Logmans. The detective determined that Logmans lived in Clifton, so he drove through Clifton with J.R., telling her to look for her attacker's car. Upon seeing a Chevy Monza on Linden Avenue, J.R. exclaimed that that was the car. The car was silver and belonged to Logmans. The officer testified at trial that there were no Chevy Monzas in the books he had shown the victim.

Detective Swartz then went with J.R. to the Clifton Police Department and showed J.R. a photo array containing a picture of Logmans. J.R. identified Logmans' picture immediately as her attacker.

On August 2, 1991, at 12:30 a.m., North Haledon police officer Joseph Ferrante went to Logmans' home to arrest him for sexual assault. Logmans answered the door in his shorts. He asked to get dressed, but then refused to do so when told that an officer would have to accompany him. While in the police car, Logmans told the officers that he had gotten up at 7:15 a.m. and went to the A&P at 7:30 a.m., and he had a register receipt to

prove it.  Officer Ferrante and Detective Swartz both testified
that they did not advise Logmans of the time of the crime when he
made this statement.[2]  They further testified that, as they were
taking him to jail, Logmans was talkative and upset.  He told
them "If I'm going to rape someone, it is going to be a Farrah
Fawcett."  Then Logmans said, "I don't even know what this girl
looks like.  Did I go to school with her?  Is she trying to get
back at me for something in high school?"

A search warrant was then executed at Logmans' home on
August 2.  The officers confiscated two red shirts, one a T-shirt
and the other a pullover.  They also took faded brown pants and
an old brown leather belt.  J.R. identified the red T-shirt as
the one her attacker wore.  She thought the belt looked like the
one her attacker wore, but she could not positively identify the
pants.  J.R. had initially reported that her attacker had worn
tan chinos.  Although J.R. was shown a pair of faded jeans, she
did state that the stains on the front made them look tan to her.

J.R. again identified Logmans from another photo array on
August 8, 1991.  On August 13, 1991, when Logmans claimed that
another man in town looked like him, the police conducted another
photo array with J.R., which contained both Logmans' picture and

---

[2]  The police had conducted a test of the time it would take
to drive from the wooded area where the attack occurred, stop at
the A&P and return to Logmans' home.  The test demonstrated that
Logmans could have been at the wooded area and at the A&P at the
relevant times.

that of the other man.  J.R. again positively identified Logmans'
picture as her attacker.  At trial, J.R. testified that Logmans
was her attacker, and that the mark on his face that day was not
as pronounced as on the day of the attack.

The State's forensic evidence at trial was equivocal.  A
blue-grey carpet fiber was taken from J.R.'s sock and compared to
a fiber removed from Logmans' pants.  They matched, but the fiber
did not match samples from Logmans' home, car, or his parents'
home.  The defense forensic expert testified that the fiber did
match the carpet in the emergency room at the hospital where the
victim was taken.  There was not enough soil available to do a
soil comparison.  A foreign hair was found in J.R.'s pubic
combing, but it did not match Logmans' pubic hair.  However, the
officer who took the pubic hair samples from Logmans testified
that he recalled Logmans' penis to be three inches in length
flaccid, and that the pubic hair was reddish-brown in color.
This matched the victim's description of her attacker.

Logmans testified at trial, denying the crime in its
entirety.  He testified that, on the morning of August 1, 1991,
he was home in bed with his fiancee, Barbara Smith.  He also
stated that he had gone to the store in Clifton for milk and
donuts and returned home to eat with his fiancee's son.  He
started work at 9:00 a.m.

11

Logmans also testified about the events of his arrest and statements made at the time.  He claimed that he refused to get dressed because he did not want the police to go "trouncing through [his] house."  He admitted the Farrah Fawcett comment, but denied saying that he did not know what the victim looked like.  He stated that he did not know the victim, but had seen her jogging in the area near his parents' home.  He further admitted telling the processing officer at jail that he was a Protestant, but did not attend church.  He said he had "no idea" what religion his grandparents were.  Logmans then asserted that his pubic hair is dark brown and that his penis is smaller than three inches.  He finally admitted that he drove a silver 1979 Chevy Monza.

Logmans' fiancee also testified and corroborated Logmans' story that he had been in bed until getting up to go to the store.  She had retrieved the register receipt from the bag in which Logmans had left it.  The checker at the A&P identified the receipt as coming from her register at 7:17 a.m. on August 1, 1991.  She remembered a "tall, seedy-looking" man who was "chunky."  He was wearing dark jeans.  She did not identify Logmans as the person she remembered making the purchase that day.

In addition to a forensic expert, the defense produced an expert on the psychological aspects of witness identification.

12

The expert opined that identifications are less accurate when the level of stress rises in a person.  He testified that J.R., the victim, was highly stressed by the incident, which undermined her ability to effectively perceive what was going on and effectively encode it in her memory.  The expert also testified that the circumstances of the car identification were suggestive.

As to the attacker's affiliation with the Methodist church, the pastor who kept the church rolls at the Cedar Cliff United Methodist Church in Haledon testified that John and Elizabeth Logmans were members since 1966.  However, the pastor did not recall Logmans attending his church and he did not know if there was a connection between the defendant and John and Elizabeth Logmans.

The Appellate Division concluded that the evidence against Logmans at trial was very strong.  (Ra25 at p. 5).

## II.  CLAIMS FOR HABEAS RELIEF

Logmans raises the following claims in his federal habeas petition:

Ground One:  Ineffective assistance of counsel.

Ground Two:  Conviction obtained by use of evidence obtained pursuant to an unconstitutional search and seizure.

Ground Three:  Sentence is unlawful and manifestly excessive.

Ground Four:  Prosecutorial misconduct during trial summation violates right to fair trial and due process.

Ground Five:  The trial court's hostility and disrespect towards petitioner's counsel during trial denied petitioner a fair trial and due process of law.

Ground Six:  Trial court erred in not ordering the State to turn over samples of blood found on the victim's shirt and sock.

Ground Seven:  Trial court's refusal to permit sidebar conferences during trial denied petitioner his right to a fair trial.

Ground Eight:  Reference at trial to petitioner's involuntary discharge from employment was unfairly suggestive and denied petitioner his right to due process and a fair trial.

Ground Nine:  Trial court's refusal to allow defense counsel to question state witnesses with regard to petitioner's exculpatory statements at the time of his arrest denied petitioner his right to due process and a fair trial.

Ground Ten:  Trial court failed to charge jury on criminal restraint as a lesser included offense of Count One (kidnapping).

### III.   <u>EXHAUSTION REQUIREMENT</u>

It is well established that a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ...

circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1); see also 28 U.S.C. § 2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004). A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.") Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d

Cir. 1993).  This means that the claims heard by the state courts
must be the "substantial equivalent" of the claims asserted in
the federal habeas petition.  <u>Picard</u>, 404 U.S. at 275.  Reliance
on the same constitutional provision is not sufficient; the legal
theory and factual basis must also be the same.  <u>Id.</u> at 277.  To
meet the exhaustion requirement, the claim need not be discussed
in a state court decision nor even be considered by the state
court.  <u>Picard</u>, 404 U.S. at 275.

Even if state remedies with respect to a particular claim
have been exhausted, a federal court still may refuse to consider
that claim if it has been procedurally barred in a state judicial
proceeding under the doctrine of procedural default.  <u>See</u> <u>Harris</u>
<u>v. Reed</u>, 489 U.S. 255 (1989); <u>Johnson v. Pinchak</u>, 392 F.3d 551,
556 (3d Cir. 2004); <u>Caswell v. Ryan</u>, 953 F.2d 853, 857 (3d Cir.
1992).  However, any procedural default must rest on "adequate
and independent" state law grounds.  <u>Harris</u>, 489 U.S. at 262;
<u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977).  This means that
the state court must have explicitly rested its decision to bar
specific claims on a particular state procedural rule.  <u>See</u>
<u>Vasquez v. Morton</u>, 1997 WL 452296, *3 (D.N.J. July 17, 1997).

Here, Logmans asserts that he raised his federal habeas
claims at various points in his state court proceedings.
Respondents contend, however, that some of Logmans' claims are

unexhausted and/or procedurally defaulted, and are thus barred from federal habeas review.

As to the allegedly unexhausted claims, respondents argue that five of Logmans' claims asserting ineffective assistance of counsel were not presented to the state court. A careful review of the state PCR proceeding and the state appellate court opinions (both on direct review and collateral review) indicate that these claims were articulated to some degree in the state court proceedings. However, to the extent that they were not fully presented to the highest state court, the Court will nevertheless review the claims under its discretion pursuant to 28 U.S.C. § 2254(b)(2),[3] because they are clearly without merit. See Lambert, 134 F.3d at 514-15 (district court may deny federal habeas petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), when "it is perfectly clear that an applicant does not raise even a colorable federal claim"); Duarte v. Hershberger, 947 F. Supp. 246 (D.N.J. 1996).

Next, respondents argue that the "unexhausted" claims of ineffective assistance of counsel should be barred from habeas review because the claims are procedurally defaulted. Likewise, respondents assert that Ground Seven of the petition (trial

---

[3]   Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

court's refusal to permit sidebar conferences during trial denied petitioner of his right to a fair trial) is procedurally defaulted.

Because the Court will address the ineffective assistance of counsel claims on the merits, the Court need not consider whether they are procedurally defaulted.  Nonetheless, as to Ground Seven, this claim was raised during Logmans' state PCR proceeding and the court found that the claim was procedurally barred by N.J.Ct.R. 3:22-4 because it could have been but was not raised on direct appeal.  The Appellate Division also found the claim to be baseless since the trial judge did not arbitrarily bar all sidebar conferences.  Further, the court held that "the events that occurred as a result of the judge's refusal to hold a sidebar during the witness's testimony were not capable of altering the outcome of the trial."  (Ra25 at p. 19).

In order to overcome this procedural bar, Logmans must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or he must demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Bousley v. United States, 523 U.S. 614, 622 (1998).  To demonstrate cause, Logmans must show that some objective factor external to the defense impeded his efforts to comply with the state court's procedural rule.  Coleman, 501

18

U.S. at 753; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (19860.  To demonstrate prejudice, Logmans also must show that the error infected the entire proceeding and that such error was of constitutional dimension.  <u>Smith v. Murray</u>, 477 U.S. 527 (1986). The fundamental miscarriage of justice exception is limited to cases that involve a showing of actual innocence.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. at 854; <u>Schlup v. Delo</u>, 513 U.S. 298, 321-22 (1995).  In order to demonstrate actual innocence, Logmans must present new, clear and convincing evidence of his innocence. <u>Schlup</u>, 513 U.S. at 316-17.

Here, Logmans cannot overcome the procedural bar because he can show no prejudice or that the error infected the entire proceeding and that the error was of constitutional dimension. <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527 (1986).  Moreover, as stated more fully <u>infra</u>, the state court found other substantial evidence of guilt to make this procedurally barred claim inconsequential.  Therefore, Ground Seven of the petition will be dismissed as procedurally barred.

IV.  <u>MERITS</u>

A.  <u>Standards Governing Petitioner's § 2254 Claims</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition

19

should be construed liberally and with a measure of tolerance.
See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v.
Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>Duarte v.
Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Logmans is
proceeding <u>pro</u> <u>se</u> in his application for habeas relief, the Court
will accord his petition the liberal construction intended for
<u>pro</u> <u>se</u> litigants.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
<u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122
S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir.
1996)(<i>citing</i> <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  <u>Id</u>.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."
<u>Id</u>. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u>
<u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>,
532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171
F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v.</u>
<u>Brennan</u>, 528 U.S. 824 (1999).

Consonant with _Williams_, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  _See_ _Werts_, 228 F.3d at 196-97;
_Matteo_, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  _Werts_, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  _Id_.  AEDPA prohibits such _de novo_ review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  _Id_.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  _Id_.; _see also_ _Jacobs v. Horn_, 395 F.3d 92, 100 (3d
Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

B.  Ineffective Assistance of Counsel

Logmans' most comprehensive claim asserts numerous grounds of ineffective assistance of counsel. In particular, Logmans raises the following instances of deficient representation by trial counsel: (1) failure to conduct adequate investigation; (2) failure to make a timely request that the jury be allowed to hear all tapes; (3) failure to call character witnesses; (4) failure to object to the term "mug shot" as used by victim during her testimony in reference to her photo identification of Logmans; (5) failure to confront state witness with contradicting information as to the witness' testimony on a critical issue; (6) failure to request a jury charge on criminal restraint as a lesser included offense on Count One of the indictment; (7)

23

failure to request a <u>Kociolek</u>[4] charge; (8) failure to advise
trial court that a juror may have discussed the case outside of
jury deliberations; (9) counsel's antagonistic behavior towards
trial judge deprived Logmans of a fair trial; (10) failure to
seek DNA testing on pubic hair and blood found on victim's shirt
and sock; (11) failure to extract vital information from victim
during cross-examination; and (12) the cumulative effect of trial
counsel's errors deprived Logmans of effective assistance of
counsel.

Respondents contend that each of the individual claims of
error lack merit.  They rely substantially on the brief submitted
in the state PCR proceeding and on appeal, the findings of the
PCR court and the Appellate Division's opinion affirming denial
of the state PCR petition.

The "clearly established Federal law, as determined by the
Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is
the standard for ineffective assistance of counsel as enunciated
in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under
<u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment
violation must demonstrate that his counsel's performance fell
below an objective standard of reasonableness, assessing the
facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-
89; <u>Jacobs</u>, 395 F.3d at 102; <u>Keller v. Larkins</u>, 251 F.3d 408, 418

_____

[4]   <u>State v. Kociolek</u>, 23 N.J. 400 (1957).

(3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973 (2001). Petitioner also must show that counsel's substandard performance actually prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. <u>Id</u>. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. <u>Id</u>. at 697. <u>See also</u> <u>Jacobs</u>, 395 F.3d at 102; <u>Keller</u>, 251 F.3d at 418.

Here, the state PCR court noted and applied the <u>Strickland</u> standard in evaluating Logmans' ineffective assistance of counsel claims. In particular, the judge found that defense counsel had made "tactical and strategic decisions during the course of the trial. A review of the record and a review of the petition clearly established that there were professional reasons why counsel may have chosen not to take steps or actions as suggested in the defendant's petition. The defendant has failed to establish a prima facie case of ineffective assistance of counsel." (Ra73 at 57:9-15).

On Logmans' appeal from denial of his state PCR petition, the Appellate Division affirmed, finding that each contention regarding ineffective assistance of counsel "lack[ed] sufficient merit to justify extended discussion in a written opinion." (Ra25 at p. 13).  The court also applied <u>Strickland</u> in reaching its determination.  The Appellate Division did comment that Logmans was "well represented by his trial counsel despite counsel's 'unruly behavior'.  The record reflects that [defense] counsel, is reputed to be well-experienced and that he vigorously protected defendant's rights.  Certainly, counsel was not constitutionally ineffective."  (<u>Id</u>.).

1.  *Failure to Conduct an Adequate Investigation*

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation."  <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997); <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  <u>Strickland</u>, 466 U.S. at 691; <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986); <u>see also</u> <u>Duncan</u>, 256 F.3d at 201.  "[S]trategic choices made after

26

less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92. Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different. Lewis, 915 F.2d at 115.

It is firmly established that a court must consider the strength of the evidence in deciding whether the second prong under Strickland, i.e., prejudice, has been satisfied. A court "must consider the totality of the evidence before judge or jury." Strickland, 466 U.S. at 695. This is necessary because prejudicial error by counsel requires a court to determine whether there is a reasonable probability that, but for counsel's errors, the trial result would have been different. Id.; Flamer v. Delaware, 68 F.3d 710, 728 (3d Cir. 1995), cert. denied, 516 U.S. 1088 (1996). A court simply cannot make this determination without considering the strength of the evidence against the defendant.

Here, the trial disclosed strong evidence that the sexual assault was committed by Logmans. Most significant was the strength and clarity of the victim's testimony and identification of her assailant as Logmans. Furthermore, the trial record does not support a claim of ineffectiveness. Logmans' trial counsel

thoroughly cross-examined all State witnesses in an attempt to undermine their credibility.  In fact, counsel was admonished on occasion by the trial judge for being vexatious and disrespectful of the witnesses.  He also produced expert witnesses on eyewitness identification and on fiber analysis, and the A&P clerk and Logmans' fiancee to bolster Logmans' alibi defense.  It is hard to imagine what further investigation would have aided Logmans in contrast to the very strong evidence against him.

Indeed, Logmans' habeas petition does not articulate what investigation counsel should have conducted but did not. However, in his state PCR proceeding, Logmans argued that his counsel (a) should have investigated the victim's background, (b) should have procured pictures of Logmans' genitalia to dispute the description provided by the victim, (c) should have produced character witnesses to show Logmans' respectful treatment of women, (d) should have established that Logmans had no reason to be near the Tides restaurant (where the victim first saw him before the attack) because he was no longer living in North Haledon, and (e) should have investigated the book of cars viewed by the victim after the assault.

The state PCR court rejected each of these claims, essentially adopting the State's arguments on each issue.  As to the victim's background, the court commented that it was not likely that an investigation would have produced fruitful

results.  It was known that the victim was a former Marine and a world class runner.  Moreover, defense counsel had probed her complete psychological history to dispute that she suffered severe personal injury as a result of the attack.  (Ra73 at 47:10-22).

Next, the issue of obtaining pictures of Logmans' genitalia was raised on direct appeal and rejected, because Logmans was allowed to testify that his genitalia did not match the victim's and an officer's description.  Further, his testimony served to corroborate the victim's description as to the size of his genitalia.  (Ra73 at 47:23-49:2).  It would appear that the decision not to obtain and produce actual pictures was a tactical and strategic decision.

The PCR court also rejected the claim that the book of cars should have been investigated to show that the Chevy Monza was listed.  The claim would have had little impact or relevance given the fact that the victim had spontaneously identified Logmans' vehicle on the street.  (Ra73 at 46:16-25).  The Appellate Division agreed, finding that "it is dubious that any further investigation into the police book of cars would have produced any evidence sufficient to change the jury's verdict", especially after the victim's spontaneous identification of Logmans' car on the street shortly after the attack.  (Ra25 at p. 16).  "Trial counsel is only required to make 'reasonable

29

investigations or to make a reasonable decision that makes particular investigations unnecessary.'" (Id., *quoting* Strickland, 466 U.S. at 691).

As to the claim that character witnesses should have been called, the PCR court found counsel's decision to be a strategic choice. Had such witnesses testified, it would have opened the door to rebuttal and served to introduce evidence concerning Logmans' relationship with his fiancee, which was "quarrelsome", including a domestic violence incident in Hawaii that resulted in a stabbing. (Ra73 at 50:1-16).

With respect to the issue that Logmans no longer lived in North Haledon to show that he did not have opportunity to plan the crime, it was shown at trial, by Logmans' own testimony, that he often visited his parents who lived there. He knew the area well and had actually seen the victim jogging in that area on prior occasions. (Ra73 at 50:17-51:11).

Finally, the Appellate Division concluded that "[n]one of these omissions [by trial counsel] amounts to the type of sub-standard performance which would require a new trial." (Ra25 at p. 19).

Therefore, from the record, it does not appear that trial counsel was deficient in investigating and preparing a defense; further, it appears from the weight of the evidence presented at trial that the jury would not have reached a different verdict.

Indeed, upon review of the trial record, the Court finds that trial counsel ably represented petitioner with a clear understanding of the evidence, witnesses and difficult issues in the case.  It cannot be said that he was ill-prepared to defend petitioner.

Therefore, the Court concludes that Logmans is not entitled to habeas relief based on allegations that trial counsel failed to investigate and prepare a defense.  There is no indication that the state courts unreasonably applied established federal law in reaching their decisions, or that the state court decisions were based on an unreasonable application of the facts in light of the evidence presented at trial.  Logmans has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.

2.  *Failure to Request that Tapes Be Played for Jury*

Logmans contends that his trial counsel was deficient in failing to request that the entire North Haledon Police Department tape recordings of telephone conversations between Logmans' fiancee and Logmans or his parents be played for the jury.  He asserts that these tapes would refute the State's position that his fiancee lied to protect him.

However, the evidence at trial showed that Ms. Smith, Logmans' fiancee, had already spoken with Logmans and knew of the

31

serious charges against him when she made the statement that he
was in bed with her in the morning.  (Ra73 at 49:3-24).  Whether
or not it was a tactical decision not to have the tapes played,
it is plain that the tapes would have had little relevance given
the strong evidence against Logmans.  The Appellate Division also
found that Logmans' position on this matter is "overstated", and
that he failed to show how the admission of the tape recordings
would have changed the result at trial.  (Ra25 at pp. 16-17).
Thus, the Court finds no error in the PCR court's decision, which
was based on the applicable federal law and which reasonably
applied the facts in accordance with the standards set forth in
Strickland.

3.  *Failure to Call Character Witnesses*

This claim was discussed with respect to the general claim
that trial counsel did not properly investigate and prepare a
defense for Logmans.  Further, the Appellate Division found that
this omission did not amount to the type of deficient performance
that would require a new trial.  (Ra25 at p. 19).  As noted
above, the claim is without merit and will be denied.

4.  *Failure to Object to the Term "Mugshots"*

Logmans contends that the use of the term "mugshots" by the
victim in her testimony at trial was prejudicial in that it
suggests that Logmans had been arrested before and was
predisposed to commit the crime as charged.  The PCR court noted

32

that the term was used only a few times by the victim and had
very little capacity to impact the jury's decision.  Furthermore,
the decision not to object was a tactical one so as not to
emphasize the characterization.  (Ra73 at 51:12-52:3).  The
Appellate Division also determined that this alleged deficiency
was not prejudicial to defendant at trial.  (Ra25 at p. 19).

This Court finds that counsel's failure to object was not
deficient in that it appears to be a tactical decision.
Moreover, the failure to object was so minimal as not to be
likely to actually prejudice Logmans or have any impact on the
jury's verdict.  The Court concludes that the state court's
decision, when evaluated objectively and on the merits, resulted
in an outcome that was reasonably justified.  Matteo, 171 F.3d at
891.

5.  *Failure to Confront State Witnesses*

Logmans next asserts that his trial counsel was not
effective in his cross-examination of State witnesses, in
particular Officer Ferrante, regarding Logmans' knowledge of the
time of the attack before giving his alibi.  This claim was
actually litigated on direct appeal with regard to the admittance
of exculpatory statements.  The Appellate Division found no merit
to it.  (See this Opinion, infra, at Section IV.I, pp. 61—62).
Further, the Appellate Division held that trial counsel was

33

vigorous and well-experienced in his conduct of examining witnesses.  (Ra25 at p. 13).

On appeal from denial of the PCR petition, the Appellate Division further remarked that use of Officer Swartz's report to impeach Ferrante during his rebuttal testimony would have been unavailing.  Swartz's report indicates that he told Logmans the time of the attack, but it does not support the inference that he told Logmans the time of the assault before Logmans offered his alibi.  Thus, the court opined: "It is not reasonable to read that portion of his report as containing contradictory evidence. ... Hence, defendant has failed to show that had such cross-examination been conducted, there is a reasonable probability the result of the trial would be different [citation omitted].  This is so, especially in light of the strong evidence of defendant's guilt."  (Ra25 at p. 17).

This Court finds that trial counsel's cross-examination of Ferrante was not deficient and did not materially influence Logmans' conviction.  There is no error in the state court decisions and this claim will be denied for lack of merit.

6.  *Failure to Request Jury Charge on Criminal Restraint*

Logmans contends that his counsel was deficient in failing to request that the jury be charged on criminal restraint with respect to the Count One kidnapping charge.  A charge was given on criminal restraint with respect to Count Two.  Logmans argues

34

that there was no basis for a strategic decision not to request such a charge on Count One.

This issue is addressed in more detail in this Opinion at Section IV.J.  On direct appeal, the Appellate Division found that "there was no rational basis for a verdict convicting the defendant of the purported included offense."  (Ra14 at p. 28; Ra73 at 53:1-7).  Here, the elements of the kidnapping with intent to commit rape charge were overwhelmingly proven.  Thus, even if the Court were to find that counsel's failure to request the lesser included offense charge was deficient, such deficiency was not prejudicial because it would not have resulted in a different verdict.

    7.  *Failure to Request Kociolek Charge*

Petitioner alleges that his trial counsel should have requested the Kociolek charge with respect to disputed oral testimony of State witnesses on the issue of Logmans' purported statement that he did not know what the victim looked like.  This issue was litigated on direct appeal.  The Appellate Division found that the trial court was obliged to give a Kociolek charge regarding the unreliability of such oral evidence, and that its failure to do so was error.  (Ra14 at p. 26).  However, the Appellate Division found that such error "did not have the capacity to produce an unjust result."  (Id.).  "[I]t was one small piece of evidence amongst many other larger pieces.

35

Therefore, the judge's failure to give the unrequested <u>Kociolek</u> charge was harmless error." (<u>Id</u>.).

Therefore, while the failure of trial counsel to request the <u>Kociolek</u> charge may be considered deficient, it was incapable of producing a prejudicial result, and the second prong under <u>Strickland</u> is not proved. Accordingly, the claim will be denied for lack of merit.

8. *Failure to Advise Court About Alleged Juror Discussion*

Logmans contends that his trial counsel failed to inform the court about information pertaining to a juror who had a personal connection to Logmans and was violating the court's instruction not to discuss the case outside of deliberations. He alleges that he had been approached by a co-worker, while out on bail, who purportedly told Logmans that he heard it doesn't look good for him. The co-worker allegedly explained that another co-worker had said his wife was working with one of the jurors, and the juror had allegedly discussed the case with her.

On appeal from denial of state PCR relief, the Appellate Division found that:

> the supporting "evidence" of juror taint consisted entirely of multiple hearsay and was completely lacking in specific content. Hence, defendant has failed to demonstrate that he may have been harmed by any alleged juror misconduct. Even if trial counsel failed to bring this matter to the judge's attention, the proffer was insufficient to question the outcome of the trial. [citation omitted].

(Ra25 at p. 18).

36

To establish ineffective assistance of counsel based on a failure to file a motion on the issue of alleged juror misconduct, Logmans must be able to show that the motion would have succeeded.  Counsel's failure to file motions does not per se constitute ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted or sustained had it been made.  United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).  Thus, "[c]ounsel cannot be faulted for failing to pursue meritless or futile objections."  Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd 118 F.3d 1576 (3d Cir.), cert. denied, 522 U.S. 972 (1997); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).

Here, Logmans' trial counsel cannot be expected to raise an issue of juror misconduct without adequate supporting evidence. The state courts found that Logmans' accusation of alleged juror misconduct was based exclusively on inadmissible multiple hearsay.  Thus, trial counsel cannot be considered deficient for any failure to raise non-meritorious issues before the trial court.  The Court finds that the decision of the state courts is

not contrary to, and does not involve an unreasonable application of, clearly established federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, this claim will be denied.

9.  *Counsel's Antagonistic Behavior To Court*

Logmans argues that his trial counsel's antagonistic behavior towards the court denied him a fair trial and constitutes ineffective assistance of counsel.[5]  The Appellate Division noted that counsel's behavior was "unruly", but found that petitioner was well represented at trial by an experienced attorney who vigorously protected Logmans' rights.  (Ra25 at p. 13).  In reviewing the entire trial record, the Appellate Division was convinced that, after applying the Strickland standard, Logmans had failed to present a prima facie case of ineffective assistance of counsel.  (Ra25 at pp. 13-15).

This Court finds that the decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of Strickland.  Nor did the Appellate Division base its decision on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this claim fails for lack of merit.

---

[5]  The alleged hostility and disrespect between trial counsel and the judge is addressed in more detail in this Opinion at Section IV.F., infra.

10.  *Failure to Seek DNA Testing*

Logmans next complains that counsel was deficient in failing to seek DNA testing before or during trial.  A post-trial motion for DNA testing was made by new counsel after trial counsel had withdrawn, and was denied.  On direct appeal, the Appellate Division held that DNA testing would not have exonerated Logmans.  Moreover, the court found that even if it had exculpatory value, there was no reason other than a tactical decision for defense counsel not to have procured the testing before trial.  (Ra14 at p. 32).

On Logmans' PCR appeal, the Appellate Division found the DNA testing claim to be essentially the same as raised and rejected on direct appeal.  The court held that Logmans failed to establish by a preponderance of credible evidence that there is a reasonable probability that the outcome of the trial would have been different had a favorable DNA result been obtained.  (Ra 25 at p. 15).  "Even if DNA testing of the victim's sock established that it was not defendant's blood, that finding would not rule out defendant as the assailant in light of the strong proof of his guilt as we noted in our discussion on direct appeal. ... Accordingly, we perceive no basis for concluding trial counsel was ineffective in not seeking DNA testing of the sock, or any other item of clothing."  (Id. at pp. 15-16).

Under Strickland, the reviewing court must be highly deferential to counsel's decisions because there is a strong presumption that counsel's performance was reasonable. Strickland, 466 U.S. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound strategy.'" Kauffman, 109 F.3d at 189 (quoting Strickland, 466 U.S. at 689). Further, the Third Circuit has held that "[i]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Id., 109 F.3d at 190 (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Here, it is apparent that trial counsel made a strategic choice not to pursue DNA testing. Even if the results showed that the blood was not Logmans, that fact alone would not have exonerated him since there was no evidence or testimony that the assailant had bled during the attack. Indeed, there was strong evidence against Logmans, especially the victim's testimony, that proved defendant's guilt as found by the jury. Thus, counsel was not deficient in failing to pursue a claim that had no likelihood of changing the outcome of the trial. The Court finds no error in the state court's decisions on this claim.

40

11.  *Failure to Adequately Cross-Examine Victim*

Logmans also alleges that his trial counsel was ineffective in failing to "extract vital information during cross-examination of [the] victim." (Petition, Ground One).  He does not elaborate on this claim, and it does not appear that it was raised on direct appeal or in his state PCR proceedings.  However, it may be connected to his claim that counsel should have investigated the victim's background.

A review of trial counsel's cross-examination of the victim shows a thorough, vigorous, and at times, aggressive interrogation.  Counsel asked about the victim's post-incident stress and her counseling and psychiatric care in an attempt to undermine her ability to accurately recall the incident and her attacker.  He covered her statements and the process of the police investigation.  He asked questions about her training as a runner, when she was in the Marine Corp, and her early aspirations to be a state trooper.  Defense counsel spent more than one day of trial in cross-examining the witness in an effort to weaken her direct testimony.  Thus, the Court finds Logmans' claim alleging an ineffective cross-examination of the victim to be wholly without merit.

41

12.  *Cumulative Effect of Trial Counsel's Errors*

Finally, Logmans asserts that the cumulative effect of his trial counsel's errors deprived him of his constitutional right to a fair and impartial trial.

Even if none of the claims on their own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process."  United States ex rel. Sullivan v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980); see also Douglas v. Hendricks, 236 F. Supp.2d 412, 436 (D.N.J. 2002) (Walls, J.) (no cumulative error when the trial was fair and verdict supported by sufficient evidence); Pursell v. Horn, 187 F. Supp.2d 260, 374 (W.D. Pa. 2002) ("That the reliability of a state criminal trial can be substantially undermined by a series of events, none of which individually amounts to a constitutional violation, is an idea that has been accepted by nearly every federal court to have addressed the issue.").  Neither the Supreme Court nor the Court of Appeals for the Third Circuit has established a standard by which claim of cumulative error must be determined.  See Pursell, 187 F. Supp.2d at 374-76 (describing three alternative approaches).

The state PCR court and the Appellate Division found that Logmans' trial counsel was not deficient, and even if deficient, it was not prejudicial.  The state courts also found that there was strong evidence in the trial record to support Logmans'

42

conviction.  This Court has determined that no errors occurred or
that, to the extent errors did occur, they were harmless.  Taken
together, any errors that may have occurred remain harmless when
cumulated.  The trial was fair and the verdict was supported by
ample, if not overwhelming, evidence.

C.   <u>Conviction Obtained by Use of Evidence Obtained by an
     Unconstitutional Search and Seizure</u>

     In Ground Two of his petition, Logmans argues that the
search warrant was invalid because it did not specify the items
the police were authorized to seize.  He further asserts that
neither the warrant nor the victim's statement established
probable cause to believe that the assailant's clothing or
footwear would be found at Logmans' address.

     Respondents contend that this claim is barred by <u>Stone v.
Powell</u>, 428 U.S. 465 (1976), which held that, where the state had
provided for full and fair litigation of a Fourth Amendment
claim, a state prisoner would be precluded further review in a
federal habeas proceeding.

     A search warrant was issued on August 2, 1991, allowing a
search of Logmans' house for "clothing, footwear, and any other
articles worn by the perpetrator of an aggravated sexual assault
as described by the victim."  (Ra14 at p. 15).  Logmans' counsel
filed a pre-trial motion to suppress the evidence obtained in the
search, and the motion was denied by the state court judge who
found that "the facts that were available to Judge Rothenberg

43

abundantly support the warrant that he issued in this case."
(Id.).  The decision to issue the warrant was based on the
victim's statement, which described both the assailant and his
clothing.  (Ra14 at pp. 15-16).

Logmans raised the very same claim as asserted here on his
direct appeal in Point I of his brief.  Thus, the issue of
whether the search was valid was presented on state appellate
review.  The Appellate Division found that "[a]lthough the
warrant should have been more specific on its face, the specific
items to be seized were incorporated by reference into the
warrant, and sufficiently guided the executing officers."  (Ra14
at p. 18).  Further, the appellate court found that the issuing
judge had probable cause to indicate Logmans' involvement in the
attack and his home address, based on the victim's statement, her
description of her assailant to police, her photo identification
of Logmans, her identification of his car on the street, and the
police work employed to determine the name and address of the
suspect.  Thus, the search warrant was validly issued.  (Ra14 at
p. 19).

Upon review of the state court record, this Court finds that
Logmans had litigated these claims in a motion to suppress, which
was denied by the trial judge.  Thereafter, he raised the same
claims in his direct appeal from conviction.  Accordingly,
Logmans had a full and fair opportunity to litigate these issues.

44

The governing case here is <u>Stone v. Powell</u>, which holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted habeas corpus relief on the ground that evidence obtained on an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 482.  The Supreme Court reasoned that application of the exclusionary rule deflects from the truth-finding process, often freeing the guilty, and while deterrence of official misconduct supports implementation of the exclusionary rule at trial, "the additional contribution, if any, of the consideration of search- and- seizure claims of state prisoners on collateral review is small in relation to the costs."  428 U.S. at 493.

Moreover, to satisfy the opportunity of the full and fair litigation requirement under <u>Stone v. Powell</u>, actual litigation of the Fourth Amendment claim is not required, only that the state provides defendant the opportunity to litigate.  <u>Jenkins v. Rafferty</u>, 618 F. Supp. 30, 35-36 (D.N.J. 1984), <u>aff'd</u>, 774 F.2d 1151 (3d Cir. 1985), <u>cert</u>. <u>denied</u>, 475 U.S. 1142 (1986); <u>see also</u> <u>Boyd v. Mintz</u>, 631 F.2d 247, 250 (3d Cir. 1980).  Therefore, where it is plain that Logmans had a full and fair opportunity to litigate his Fourth Amendment claim in state court, and where the

state appellate court found that the issue lacked merit, Ground
Two of the petition will be denied.[6]

D.  Petitioner's Sentence is Unlawful and Manifestly Excessive

In Ground Three of his petition, Logmans argues that the
"factual determinations relied upon by the trial court to support
the sentence imposed were contrary to the jury verdict."  He
further asserts that the trial court "erroneously ruled that
consecutive sentences should be imposed", and that the sentence
was "unjust, inappropriate, and manifestly excessive."

Respondents counter that claim is not a federal claim and is
not cognizable on federal habeas review.  Principally,
respondents contend that sentencing is generally a matter of
state law and "cannot justify the federal intervention of habeas
corpus relief."  Ervin v. Beyer, 716 F. Supp. 163, 165 (D.N.J.
1989).

Logmans raised a similar excessive sentence claim in his
direct appeal to the New Jersey Appellate Division.  The
Appellate Division ruled:

> Even if the facts may not support a finding that the
> kidnapping or the aggravated sexual assault was not
> particularly heinous or cruel, the maximum sentence was
> justified for the kidnapping, and the maximum for the
> aggravated sexual assault does not shock the judicial

---

[6]  Moreover, even if the Fourth Amendment issue was decided
incorrectly, a petitioner may not continue to litigate it in
federal court.  Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir.),
cert. denied, 479 U.S. 1041 (1986).

conscience.  <u>State v. Roth</u>, 95 N.J. 334, 364 (1984).  The
circumstances surrounding the kidnapping certainly do.

At sentencing, the judge read the victim's letter how she
suffered physically and psychologically from this ordeal.
The victim stated further: "It would be a mockery of the
values that this country says it stands for if J. Logmans
didn't get the maximum sentence.  It would also be a mockery
of my testimony, my agony and of me."

The victim's husband and mother also wrote to the judge on
the effect of the episode on the victim.  In fact, the
husband wanted to kill the defendant.  The sentencing judge
found that this brutal episode "not only put [the victim's]
Olympic dream to an abrupt halt, but left her, as I
understand it, emotionally and physically scarred for life."
Consecutive sentences were warranted.  In fact, defendant
received no additional prison time for seven crimes.

(Ra14 at p. 33).

Based on the record, this Court finds that petitioner's
sentence fell within the permissible statutory limit in effect at
the time.  The Court also finds the determining factors advanced
by the sentencing judge in support of the consecutive sentence
were sound and reasonable.  (Ra71, pp. 78-95).  Moreover, even
if this Court was of the opinion that the sentence was excessive,
which is not the case, it is well established that "the severity
of the defendant's sentence alone constitutes no ground for
[habeas] relief."  <u>United States ex rel. Jackson v. Myers</u>, 374
F.2d 707, 711 n. 11 (3d Cir. 1967); <u>see</u> <u>also</u> <u>Townsend v. Burke</u>,
334 U.S. 736, 741 (1948).

Sentencing is generally considered a matter of state
criminal procedure, which does not fall within the purview of
federal habeas review.  <u>Johnson v. Beto</u>, 383 F.2d 197, 198 (5th

47

Cir. 1967), cert. denied, 393 U.S. 868 (1968); U.S. ex rel.
Jackson v. Meyers, supra.  Indeed, absent some constitutional
violation, federal courts cannot review a state's alleged failure
to adhere to its own sentencing procedure.  Rorie v. Beard,
Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7,
2005)(citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir.
1988)).  Thus, a federal court will not reevaluate a sentence in
a habeas proceeding unless it exceeds the statutory limits.
Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d
Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831
(7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985)("As a general
rule, federal courts will not review state sentencing
determinations that fall within statutory limits."); Bonner v.
Henderson, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not
upset the terms of a sentence within statutory limits unless so
disproportionate to the offense as to be completely arbitrary and
shocking").

    Here, petitioner has not alleged that his sentence violates
any federal constitutional rights.  Only issues of state law were
raised below in state court, and the state appellate court found
that the excessive sentence claim was without merit.  Moreover,
Logmans' sentence does not exceed the statutory limits.
Therefore, Ground Three of the petition is not subject to federal
review and will be denied.

48

E.   <u>Prosecutorial Misconduct During Trial Summation</u>

In Ground Four of the petition, Logmans asserts that there were numerous instances of prosecutorial misconduct during the summation at trial.  In particular, the prosecutor attacked an alibi witness on "crude sexual speculation", and he made references to matters outside evidence.  The prosecutor also mentioned the failure of the defense to call the son of Logmans' fiancee to testify, and denigrated the defense.  Logmans complains that in totality, these and other instances during summation deprived him of a fair trial.

Logmans raised a claim of prosecutorial misconduct on direct appeal.  The Appellate Division summarily rejected it, finding that "the prosecutor's comments were within the bounds of fair comment", and that "[i]n any event, any comments could not have caused an unjust result."  (Ra14 at p. 30).

Respondents contend that Ground Four should be denied because Logmans has failed to show that the state court judgment is deficient under AEDPA.  Further, habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly v. DeChristorforo</u>, 416 U.S. 637, 643 (1974).

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the

49

culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209,
219 (1982).  If it does not infect the entire trial, misconduct
alone is not enough to warrant a new trial.  <u>Id</u>. at 220.  "A
criminal conviction is not to be lightly overturned on the basis
of a prosecutor's comments [or conduct] standing alone, for the
statements or conduct must be viewed in context."  <u>United States</u>
<u>v. Young</u>, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the
obligation of a prosecutor to conduct a criminal prosecution with
propriety and fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ... Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935).  "The line
separating acceptable from improper advocacy is not easily drawn;
there is often a gray zone.  Prosecutors sometime breach their
duty to refrain from overzealous conduct by commenting on the
defendant's guilt and offering unsolicited personal views on the
evidence."  <u>Young</u>, 470 U.S. at 7.

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,

50

supports the charges against the defendant and can thus
jeopardize the defendant's right to be tried solely on
the basis of the evidence presented to the jury; and
the prosecutor's opinion carries with it the imprimatur
of the Government and may induce the jury to trust the
Government's judgment rather than its own view of the
evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's
opening or closing remarks are challenged in habeas, "[t]he
relevant question is whether the prosecutor's comments 'so
infected the trial with unfairness as to make the resulting
conviction a denial of due process.'" Darden v. Wainwright, 477
U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, supra).
In evaluating the likely effect of improper comments, a court may
consider whether the improper comments were invited by or
responsive to prior comments by opposing counsel. Darden, 477
U.S. at 181-82. Thus, "Supreme Court precedent counsels that the
reviewing court must examine the prosecutor's offensive actions
in context and in light of the entire trial, assessing the
severity of the conduct, the effect of the curative instructions,
and the quantum of evidence against the defendant." Moore v.
Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, as found by the Appellate Division, the prosecutor's
comments during summation were not outrageous, improper, or
personal. They were consistent with the evidence presented at
trial, and did not unfairly prejudice petitioner. Moreover, the

few remarks during summation did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.  The decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of, clearly established federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Ground Four of the petition will be denied.

F.   Judicial Bias or Hostility

Petitioner next contends, in Ground Five of his petition, that the trial judge was hostile and disrespectful to defense counsel, which deprived petitioner of a fair trial and due process of law.  Logmans further alleges that the court violated Code 3A(3) of the code of judicial conduct.

This claim was raised on direct appeal.  The Appellate Division found that, although there was a level of animosity between the trial judge and the defense counsel, the judge remained professional and impartial and conducted a fair trial. (Ra14 at pp. 30-31).  The Appellate Division also noted that there were problems between the trial judge and defense counsel before trial.  The judge had warned defense counsel about being "sarcastic and demeaning to the Court," and told counsel that "the Court is not going to tolerate [it]."  Although defense counsel accused the judge of "baiting" him, the Appellate

52

Division observed that it was counsel who triggered the baitings. The Appellate Division found that while defense counsel's "unruly behavior" in court strained the judge's patience, the trial judge did not "cross[] the line" and deprive Logmans of a fair trial. (Ra14 at p. 31).

"The Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) (citations omitted).  See also United States ex rel. Perry v. Cuyler, 584 F.2d 644, 645 (3d Cir. 1978), cert. denied, 440 U.S. 925 (1979). Judicial bias may be demonstrated by a judge's personal interest or stake in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties.  See, e.g., In re Murchison, 349 U.S. 133 (1955); Tumey v. Ohio, 273 U.S. 510 (1927).  Alternatively, bias may be demonstrated by judicial misconduct, in which the judge conducts the proceedings in a manner that strongly suggests to the jury that the judge disbelieves the defendant's case or, for other reasons, thinks the prosecution should prevail.  See, e.g., Liteky v. United States, 510 U.S. 540 (1994).

Here, Logmans cannot point to any comment that demonstrates such a personal interest or prohibited pervasive climate of partiality and unfairness that infected the trial.  The exchange

53

between defense counsel and the trial judge concerning the
"baiting" accusation and contempt citation occurred pre-trial.
(Ra34, 10:21-14:3).  The contempt citation was vacated before the
trial began after both defense counsel and prosecutor met with
the judge to resolve the tension and agreed to conduct the trial
professionally.  (Ra36, 5:18-8:8).  While Logmans also alleged
that the court interfered with defense counsel's cross-
examination of several witnesses, these occasions were few, and
were not hostile or prejudicial to the defendant.  Rather, the
judge was ruling on objections made by the prosecutor, and was
attempting to control vexatious and disrespectful conduct by
defense counsel towards the witnesses.  The <u>sua</u> <u>sponte</u> objection
made by the judge on one occasion regarded a matter that had
already been answered by the witness.  Some of the evidentiary
rulings later challenged by Logmans as hostile and impartial were
actually in the defendant's favor.

Moreover, defense counsel, who was never reluctant to object
to or criticize the court's rulings, did not accuse the judge of
impartiality when the court asked defendant's forensic expert
several questions to clarify the expert's opinion.  The court's
questions were not hostile, prejudicial, or demeaning to the
expert or the defendant.  In all, it is apparent from the
transcripts of the trial proceedings that the judge interjected
only when the circumstances warranted it, and admonished both the

prosecutor and the defense counsel to act professionally.  The
court was attempting to maintain professionalism and civil
courtesy in the courtroom between counsel and with respect to the
witnesses.  There was nothing said or done by the trial judge
that unfairly disparaged defense counsel in front of the jury.
Nothing in the trial judge's admonishments to defense counsel's
sarcasm and disrespectful conduct to the court and to the
witnesses demonstrated an impermissible bias against Logmans so
as to suggest to the jury that they should arrive at a particular
verdict.  Indeed, the court expressly instructed the jury that
they were to decide defendant's innocence or guilt based upon
consideration of all of the evidence, and that they were not to
consider the remarks made by court to counsel, counsel to court,
or counsel to counsel.  (Ra62, 127:2-7; 164:1-20).

Therefore, the finding by the Appellate Division on this
issue (that the trial judge's conduct during trial, *albeit*
strained at times, was professional and impartial and did not
deprive defendant of a fair trial) is not contrary to, or an
unreasonable application of, clearly established federal law.
Nor is the Appellate Division's decision based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceedings.  Accordingly, this claim will be
denied as without merit.

G.   DNA Testing

     In Ground Six, Logmans asserts that the trial court erred in

denying his post-judgment request for an order compelling the

State to turn over blood samples found on the victim's shirt and

sock for DNA testing.  In denying the motion (Ra70, pp. 41-50),

the trial judge stated:

> If there was a basis for total exculpation, this Court would
> have no hesitancy. ... There must be some finality to
> litigation ... I don't feel, from the proofs presented and
> the law presented, that there is a justifiable basis for
> this Court to enter an Order permitting the DNA testing.

(Ra70, 49:12-24).

     On direct appeal, the Appellate Division found that even if

the blood on the victim's clothing was determined not to be the

defendant's blood, that fact would not exonerate him because

there was no evidence that the assailant bled during the assault.

The Appellate Division further noted that Logmans had offered no

reason as to why he could not have obtained the DNA testing

before trial, opining that it was a "tactical decision to keep

out any possible negative findings of the DNA tests.  After this

gamble, defendant should not now be permitted to reopen the

finality of the verdict."  (Ra14 at p. 32).

     There is no federal constitutional right to DNA testing.

However, to the extent that it implicates Brady v. Maryland, 373

U.S. 83, 87 (1963), in seeking to access potentially exculpatory

information, or to conclusively prove the defendant's actual

innocence, a petitioner may be entitled to DNA testing.  <u>See</u>
<u>Jimenez v. New Jersey</u>, 245 F. Supp.2d 584, 587 (D.N.J. 2003).
<u>See also</u> <u>Steward v. Grace</u>, __ F. Supp.2d __, 2005 WL 730328, n.
39 (E.D.Pa., March 30, 2005); <u>Roberts v. Toal</u>, 1997 WL 83748 at
*14 (E.D.Pa., Feb. 20, 1997)(finding no due process or equal
protection rights to DNA testing).

     The facts in this case do not support a claim that denial of
DNA testing violated Logmans' constitutional rights.  First and
foremost, even if the DNA results would show that the blood on
the victim's sock and shirt did not belong to Logmans, that fact
alone would not serve to prove his innocence.  There was no
evidence produced at trial to show that the assailant had bled
during the attack.

     Second, Logmans was fully aware of the blood stains in this
case before and during trial, but failed to request DNA testing
until after he was convicted.  The Appellate Division found this
failure to procure DNA testing before or during trial to be a
strategic decision to keep out non-exculpatory or any potential
negative findings.  Moreover, the Appellate Division found that
the public interest in the finality of judgments clearly
outweighs the non-probative and non-exculpatory value of DNA
testing that could have been obtained beforehand but for
defendant's tactical gamble.

State court rulings on evidentiary issues are not cognizable on federal habeas review unless they implicate a deprivation of fundamental fairness at the defendant's state trial.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. at 642-43; <u>Bisaccia v. Attorney General of the State of New Jersey</u>, 623 F.2d 307, 312 (3d Cir.), <u>cert</u>. <u>denied</u>, 449 U.S. 1043 (1980).  There is nothing in the state court record to show that the denial of DNA testing deprived Logmans of a fundamentally fair trial.  This Court finds that the Appellate Division's decision on this matter is not contrary to, or an unreasonable application of, clearly established federal law.  Nor is the Appellate Division's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, this claim regarding DNA testing will be denied as meritless.

H.  <u>"Bad Act" Evidence Unfairly Prejudicial to Defendant</u>

In his Eighth claim,[7] Logmans asserts that he was denied due process and a fair trial because of an unnecessary trial

_____

[7]  Logmans' seventh claim for habeas relief will be dismissed as procedurally defaulted.  <u>See</u> this Opinion, <u>supra</u>, at pp. 13-15.  However, the Court alternatively notes that the claim is without merit because the trial court record does not factually bear out petitioner's claim.  In fact, the court did initially conduct sidebar conferences at trial with respect to both the defense counsel and the State's request, and continued to do so, despite a comment later in the proceedings that such sidebars would be denied so as to keep the trial moving without protracted evidentiary delays.  The court even held a lengthy evidentiary hearing on defendant's eyewitness identification expert.  (Ra51 at 150:24-151:2; 165:20-170:15; Ra53 at 119:24-120:6; and Ra56, Ra57).

reference to his having been involuntarily discharged from employment.  Logmans contends that reference to his involuntary termination unfairly suggests that he was a bad person.  Respondents argue that this claim is not a cognizable federal claim, and that it should be denied as without merit.

Logmans raised this claim on direct appeal.  The Appellate Division noted that Logmans placed his work history in issue when his attorney elicited during direct examination that he was a hard-working, steadily employed person.  On cross-examination, Logmans testified, over his counsel's objection, that he had been involuntarily discharged from a job with a lumber company.  Thus, the trial judge had properly ruled the testimony admissible based on Logmans having put his steady work record into issue on direct testimony.  (Ra14 at pp. 19-20).

The Appellate Division also held that, for petitioner's claim to have merit, his discharge from employment must be considered a "civil wrong", and termination from employment does not constitute a civil wrong.  Since the admitted testimony did not relate to a crime or civil wrong, the reference to the involuntary discharge was appropriately offered on the issue of defendant's credibility.  (Ra14 at p. 20).

As a general rule, a federal habeas court will not review a state court's action in admitting evidence.  See Lisbena v. California, 314 U.S. 219, 228 (1941); Brown v. Tard, 552 F. Supp.

1341, 1350 (D.N.J. 1982).  Matters of state court procedure are generally matters of state law and cannot justify federal intervention.  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).  However, an evidentiary ruling that deprives a defendant of fundamental fairness at his state trial is cognizable in a federal habeas action.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. at 642-43; <u>Bisaccia</u>, 623 F.2d at 312.  Thus, this Court may inquire into the admission of the involuntary discharge reference only to determine whether the claimed error was of such constitutional dimension as to deny fundamental unfairness.

In this case, the Court finds that the admission of Logmans' complete work history, which included reference to his firing on cross-examination, was not an error of constitutional magnitude, especially since defendant had put the matter in issue on his direct testimony.  The Appellate Division's ruling on this evidentiary issue is not contrary to, or an unreasonable application of, clearly established federal law.  Nor is the Appellate Division's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, the Court will deny petitioner's Eighth Ground for habeas relief.

I.   <u>Court's Refusal to Allow Counsel to Question Witnesses on Defendant's Exculpatory Statements</u>

In his Ninth claim for habeas relief, Logmans argues that he was denied the right to present a defense when the trial judge

60

refused to allow defense counsel to question State witnesses concerning certain exculpatory statements made by Logmans at the time of his arrest.  Logmans contends that only the incriminating portions of the statements were admitted.

On direct appeal, the Appellate Division found this claim to be meritless as the defendant was not denied his right to present evidence.  From this Court's review of the state court record, it is plain that Logmans was not denied the right to present at trial the exculpatory statements he uttered at the time of his arrest.

Although the trial judge had ruled that defendant's self-serving exculpatory statements could not be mentioned in the opening statement, (Ra40, 49:4-52:15), and on the cross-examination of Officer Ferrante, (Ra35, 186:8-14; 189:1-4; 190:24-191:1), the court did allow Officer Ferrante to testify about the statements made by Logmans at the time of his arrest. (Ra35, 188:14-25).  The court also allowed Officer Most to testify on the subject during cross-examination.  (Ra39, 148:22-149:4).  Further, testimony concerning these exculpatory statements was permitted during Logmans' testimony and the testimony of his fiancee.

Thus, there is absolutely no merit to Logmans' claim and it will be denied accordingly.

J.  <u>Failure to Charge Jury on Lesser Included Offense</u>

In his last claim, Ground Ten, Logmans alleges that the trial court failed to charge the jury on criminal restraint as a lesser included offense of Count One, charging kidnapping.  It should be noted that criminal restraint was charged in Count Two. Respondents contend that this ground is not a federal claim. Respondents also assert that the claim is without merit because there was no evidentiary basis for a jury charge on criminal restraint with respect to Count One's kidnapping charge.

Logmans raised this claim on direct appeal, and the Appellate Division rejected it without substantial discussion. The court simply found that "there was no rational basis for a verdict convicting the defendant of the purported included offense."  (Ra14 at p. 28).  It should be noted that Logmans did not request such a charge.

State courts have absolute authority to interpret their own criminal laws.  <u>Gillespie v. Ryan</u>, 837 F.2d 628, 632 (3d Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 833 (1988).  Here, Count One charged defendant with kidnapping for the purpose of facilitating a sexual assault in violation of N.J.S.A. 2C:13-1b(1).[8]  From this

---

[8]  Logmans was charged on Count Two with kidnapping by unlawfully removing the victim a substantial distance from where she was found or by unlawfully confining her for a substantial period of time to inflict bodily injury on her or to terrorize her.  N.J.S.A. 2C:13-1b(2).  The trial judge did charge criminal restraint as a lesser included offense on Count Two, and the jury convicted Logmans of criminal restraint on Count Two.  However,

Court's review of the record, the evidence at trial showed that defendant accosted the victim while she was jogging and told her that he wanted to rape her.  He dragged her by force a substantial distance into the woods away from detection and proceeded to sexually assault the victim.  There was no evidence to show that Logmans kidnapped his victim for any other purpose than to sexually assault her and causing bodily injury to her. Thus, to acquit on Count One as charged and convict on criminal restraint, the jury would have to find that Logmans did not remove the victim a substantial distance or that he did not remove her for the purpose of sexually assaulting her.  See State v. Brent, 137 N.J. 107, 123 (1994).  There was no evidence at trial that would support such a conclusion.  Therefore, where the trial record clearly shows that criminal restraint was not supported by the evidence with respect to Count One, there was no basis for the trial court to charge the jury on criminal restraint as a lesser included offense to Count One.

Accordingly, the Court finds that the decision of the Appellate Division on this issue is not contrary to, and does not involve an unreasonable application of, clearly established federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

the charge on criminal restraint as to Count Two has no bearing as to Count One because the evidence at trial clearly supports the kidnapping charge for the purpose of sexually assault.

63

proceedings.  Ground Ten of the petition will be denied on the merits.

## V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Logmans demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **CONCLUSION**

For the foregoing reasons, this Court finds that Logmans' § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.

_____
/s JOEL A. PISANO
United States District Judge

Dated: April 29, 2005

64